

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-21-2000

# Lines v Larkins

Precedential or Non-Precedential:

Docket 97-2050

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Lines v Larkins" (2000). *2000 Decisions.* Paper 61.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/61

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 21, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-2050

LAWRENCE LINES,

      Appellant

v.

DAVID LARKINS, WARDEN; THE DISTRICT ATTORNEY
OF THE COUNTY OF BUCKS; THE ATTORNEY GENERAL
OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil No. 97-cv-01500
District Judge: Hon. Donald W. VanArtsdalen

Argued
October 7, 1998

Before: McKee, and Rendell, Circuit Judges, and
Debevoise, District Judge1

(Filed: March 21, 2000)

        Elizabeth K. Ainslie, Esq. (Argued)
        Schnader, Harrison, Segal & Lewis
        1600 Market Street
        Suite 3600
        Philadelphia, PA 19103

        Attorney for Appellant

_____

1. Honorable Dickinson R. Debevoise, United States District Court for the
District of New Jersey, sitting by designation.

        Stephen B. Harris, Esq. (Argued)
        Heather A. Castellino, Esq.
        Office of District Attorney
        55 East Court Street
        Bucks County Courthouse
        Doylestown, PA 18901

        Attorneys for Appellees

OPINION OF THE COURT

McKEE, Circuit Judge.

We are asked to review the District Court's dismissal of
Lawrence Lines' petition for a writ of habeas corpus under
28 U.S.C. S 2254. The District Court held that Lines had
not exhausted his state court remedies, and dismissed the
petition without prejudice based upon that court's
conclusion that Lines could return to state court to
properly present his claims there. We agree that Lines has
not exhausted his state court remedies. However, we
conclude that returning to state court would be futile and
that his claims are all procedurally defaulted. We also
conclude that Lines can not establish cause and prejudice
for the default and that failing to reach the merits of his
petition would not result in a fundamental miscarriage of
justice. We therefore hold that his petition must be
dismissed with prejudice. Accordingly, we will affirm, but
modify, the order of the District Court dismissing Lines
petition for relief under 28 U.S.C. S 2254.

I. Procedural and Factual Background

The procedural history of this appeal illustrates just how
serpentine the path to federal habeas review has become
and the unexploded mines awaiting even seasoned
practitioners who attempt to navigate under 28 U.S.C.
S 2254.2

_____

2. This is not to suggest that anyone other than Lines himself is
responsible for much of the complexity here. It is his own conduct that
has prevented him from getting the review he has been seeking in the
state and federal courts. As will be seen from our discussion, his flight
during the course of his jury trial tossed a procedural monkey wrench
into subsequent proceedings in both state and federal court.

Lines was tried for murder in state court in 1986.
However, he escaped from custody on October 10, 1986,
while the jury was deliberating. The jury convicted Lines in
absentia, and his trial attorney filed post-verdict motions on
his behalf, and in his absence. Lines was apprehended on
December 21, 1986, while those post-verdict motions were
pending. Thereafter, he retained new counsel whofiled
additional post-verdict motions on his behalf. The
Commonwealth moved to quash the post-verdict motions,
arguing that Lines was no longer entitled to seek post-
verdict relief because he had absconded during his trial.
However, the trial court never ruled on the
Commonwealth's motion. Instead, the court held numerous

evidentiary hearings on the merits of Lines' claims and, by order dated May 23, 1991, the trial court denied the post-verdict motions on the merits. On July 19, 1991, Lines was sentenced to life imprisonment on the murder conviction.

Following sentencing, Lines filed a timely direct appeal to the Pennsylvania Superior Court in which he raised the following questions:

> 1. Did the attorney for the Commonwealth, in his closing presentation, continuously express his personal opinions of the evidence so as to deprive the appellant of a fair trial?

> 2. Did the Commonwealth commit prosecutorial misconduct in failing to disclose exculpatory evidence concerning its star witness, failing to comply with discovery rules, and failing to correct perjured testimony of the star witness, thus requiring a new trial?

> 3. Was the Defendant-Appellant denied effective assistance of counsel when defense counsel allowed the admittance of hearsay statements without objection, failed to properly prepare for trial and conduct an independent defense investigation, failed to utilize character witness testimony, and failed to develop and present a coherent and cogent theory of defense?

Brief of Appellant at 2.3 The Commonwealth responded by
_____

3. Inasmuch as we must identify the issues Lines has raised in state court with precision in order to properly resolve this appeal, we set forth

asking the Superior Court to dismiss Lines' appeal based upon his flight. The Commonwealth argued that the trial court had erred in not quashing Lines' post-verdict motions because he had been a fugitive when his post-trial motions were filed.

The Superior Court agreed with the Commonwealth, and held that the trial court had erred in failing to quash Lines' post-verdict motions. The court stated: "Pennsylvania law indicates that a trial court is without discretion and, therefore, must dismiss a defendant's post-trial motions as long as a defendant is a fugitive." Commonwealth v. Lines, 415 Pa. Super. 438, 440, 609 A.2d 832, 833, allocatur denied, 532 Pa. 662, 618 A.2d 983 (1992). The court held

that "appellant has forever forfeited his right to appeal by electing to become a fugitive after post-trial procedures have begun." Id., 415 Pa. Super. at 443, 609 A.2d at 834 (internal quotation marks omitted). The court's holding was partially based upon a then-recent decision wherein the Pennsylvania Supreme Court had stated:

> A defendant's voluntary escape acts as a per se forfeiture of his rights of appeal, where the defendant is a fugitive at any time after post-trial proceedings commence. Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody. Thus, by choosing to flee from justice, appellant has forever forfeited his right to appeal.

Commonwealth v. Jones, 530 Pa. 536, 541, 610 A.2d 439, 441 (1992). In its opinion, the court listed Lines' substantive claims but did not address them.4

_____

verbatim the "Questions Presented" section of the brief he filed with the Superior Court on direct appeal. See Brown v. Cuyler, 158-160 (3d Cir. 1982) (we scrutinize the relevant pleadings and briefs to determine if a petitioner fairly presented his or her claim in state court).

4. Judge Johnson filed a dissenting opinion that foreshadowed a change the Pennsylvania Supreme Court would subsequently make in the fugitive forfeiture rule. He argued that the majority ought not to have applied a per se forfeiture rule under the circumstances surrounding Lines' appeal. Judge Johnson stated:

4

Thereafter, Lines filed a timely Petition for Allowance of Appeal to the Pennsylvania Supreme Court. In his Petition, Lines challenged only the Superior Court's application of the fugitive forfeiture rule; he did not include the substantive claims he had raised in his brief to the Superior Court. On October 28, 1992, the Pennsylvania Supreme Court denied his Petition.

On March 31, 1993, Lines filed a petition for collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. SS 9501 et seq. He raised the following issues in that petition:

> 1. Whether appellate counsel was ineffective for failing to submit to the appellate courts that their retroactive application of Commonwealth v. Jones to the appellant's case would be a violation of the appellant's due process rights.

2. Whether appellate counsel was ineffective for failing to submit to the appellate courts that a retroactive application of Commonwealth v. Jones violates the constitutional prohibition against ex post facto laws.

3. Whether appellate counsel was ineffective for failing to submit to the appellate courts that a five year delay in the appellant's sentencing on the above-captioned matter violated his Sixth Amendment right to a speedy trial.

_____

I am unable to glean any support for the proposition that an appellate court cannot review an appeal where the defendant was a fugitive prior to appeal where the trial court did not dismiss post-

trial motions. . . . The cases relied on by the Majority fail to support

either that a trial court must dismiss a defendant's post-trial motions if the defendant becomes a fugitive, or that this court has no power to hear an appeal from a judgment of sentence rendered against a defendant who was a fugitive prior to appeal where the trial court has not dismissed his post-trial motions.

Commonwealth v. Lines, 415 Pa. Super. at 447-448, 609 A.2d at 836-837 (Johnson, J., dissenting). Despite his disagreement with the majority, Judge Johnson would still have denied Lines relief, because he concluded Lines' claims were meritless.

5

4. Whether appellate counsel was ineffective for failing to raise whether trial counsel was ineffective when he failed to object to the trial court's jury instruction regarding accomplice testimony.

5. Whether the appellant is entitled to a new trial on the basis of after-discovered evidence.

The PCRA court began its discussion of Lines' petition by declaring: "it is the opinion of this court that this entire petition is improper." The court's view of the impropriety of Lines' PCRA petition was based, in part, upon the court's belief that "appellant is using this petition in an attempt to attack a Superior Court decision in which that court refused to adjudicate appellant's claims on the basis that appellant waived his appeal right because appellant absconded." The court concluded: "This collateral attack is impermissible." Opinion at 3. Nevertheless, the court assumed arguendo that Lines could "maintain such an appeal," id., and denied the petition on the merits without

a hearing.

Lines appealed to the Pennsylvania Superior Court, which affirmed the denial on the merits of the PCRA petition as to all but one of the issues Lines had raised. The court found that Lines' challenge to appellate counsel's ineffectiveness for failing to raise a claim concerning trial counsel's ineffectiveness had been waived because Lines absconded. The court stated:

> Since appellant's voluntary escape resulted not in a waiver of those issues addressed in the quashed appeal, but a complete forfeiture of his right to appeal, appellate counsel was effectively barred from raising the issue of ineffectiveness of trial counsel and, thus, cannot be deemed ineffective for having failed to include certain issues in the direct appeal.

Opinion at 3-4. Thereafter, the Pennsylvania Supreme Court denied Lines' Petition for Allowance of Appeal from the Superior Court's decision.

On February 28, 1997, Lines filed the instant habeas corpus petition under 28 U.S.C. S 2254, raising the following claims:

> 1. Lines' Due Process Rights were violated (1) when the prosecutor refused, despite demand, to disclose that John Gabriele had been immunized and (2) when the prosecutor permitted John Gabriele to perjure himself throughout his assertions of non-involvement in drug activity.
>
> 2. Lines was deprived of his Sixth Amendment right to the assistance of competent counsel at his trial and his right to confront the witnesses against him.
>
> 3. Lines' counsel's performance at trial fell below the standard of competence required and deprived Lines of his Sixth Amendment rights because:
>
>> (a) counsel failed to ask for severance of counts;
>>
>> (b) counsel failed to object to hearsay te stimony;
>>
>> (c) counsel failed to adopt any theory of defense; and
>>
>> (d) counsel failed to call character witne sses.

4. The prosecutor's closing arguments constituted a violation of due process by offering his personal opinions concerning certain testimony.

The Commonwealth asked the District Court to dismiss the petition based upon Lines' purported failure to exhaust remedies in state court. The Commonwealth argued that Lines was precluded from obtaining any relief under 28 U.S.C. S 2254 because he had not presented any of his federal habeas claims to the Pennsylvania Supreme Court. The Commonwealth relied in part upon Fiegley v. Fulcomer, 833 F.2d 29 (3d Cir. 1987), to argue that Lines was procedurally barred from federal habeas review because the Superior Court had quashed his appeal, and he could not establish the cause and prejudice that was a condition precedent to obtaining federal habeas relief on his defaulted claims.

The District Court referred Lines' habeas petition to a Magistrate Judge who filed a Report and Recommendation recommending dismissal of the habeas petition. The Magistrate Judge reasoned that the Superior Court's

7

application of Pennsylvania's fugitive forfeiture rule did not excuse Lines from presenting his substantive claims to the Pennsylvania Supreme Court. Inasmuch as Lines could not demonstrate cause and prejudice for his failure to present the substance of his claims to the Supreme Court or that a fundamental miscarriage of justice would result from not reviewing his claims, the Magistrate Judge concluded that Lines was not entitled to an adjudication on the merits of his habeas petition.

Lines objected to the Report and Recommendation, and argued that the Magistrate Judge's conclusion was inconsistent with our holding in Doctor v. Walters, 96 F.3d 675 (3rd Cir. 1996). The District Court disagreed with both the Magistrate Judge and Lines. The District Court concluded that:

> it is not entirely clear that the Pennsylvania Supreme Court would not have heard Petitioner's claims, nor that Petitioner was procedurally barred from appealing his claims to the state supreme court. Because [he] has not appealed the issues in the instant petition to the Pennsylvania Supreme Court, the highest state court has not yet had the opportunity to review the merits of the claims Petitioner now raises, and therefore, the Pennsylvania Supreme Court has not been given the chance to correct any alleged error or mistake of the lower state court.

Opinion at 8. Under the District Court's interpretation of
Doctor, Pennsylvania's fugitive forfeiture rule was not an
independent and adequate state rule barring federal habeas
review "because it was not firmly established at the time of
the alleged waiver that a Pennsylvania court lacked the
discretion to hear an appeal first filed after Petitioner had
been returned to custody." Id. at 8-9. The court reasoned
that "it is possible that the state supreme court would
review Petitioner's claims, [and therefore] I must dismiss
[the] petition . . . for Petitioner's failure to exhaust his state
court remedies." Id. at 12.

Lines filed a motion for reconsideration arguing that the
District Court had misconstrued Doctor. Lines asserted that
Doctor required the court to excuse exhaustion and proceed

8

to the merits of the petition, rather than dismiss the
petition for failure to exhaust. According to Lines,
exhaustion is excused and the District Court should
address his petition on the merits because Doctor held that
the fugitive forfeiture rule is not an "independent and
adequate" state rule that bars federal habeas relief. Reply at
3-4. On appeal, Lines suggests that any failure to present
the merits of his appeal to the Supreme Court must be
excused. Lines argues that the Pennsylvania Supreme
Court:

> would not have considered [his underlying claims] until
> and unless the [Superior C]ourt had considered them
> and ruled on them. If the Supreme Court had felt,
> however, that Lines was entitled to have his
> constitutional issues heard by the Pennsylvania
> Supreme Court, it could and would have remanded to
> the Superior Court for consideration in the first
> instance.

(Brief at 8.).5

Lines filed a timely notice of appeal from the District
Court's denial of his habeas petition, and we granted his
request for a certificate of appealability to determine
whether the District Court correctly dismissed the petition
for lack of exhaustion.6 On appeal, Lines repeats his
argument that the District Court should have addressed
the merits of his petition because exhaustion must be
excused under the circumstances here. Lines contends that
since he has already unsuccessfully filed one PCRA petition
and a direct appeal, he has no means to exhaust his claims
in state court, and the District Court should therefore hear
his claims on the merits.

_____

5. Lines cites Wiegand v. Wiegand, 461 Pa 482, 337 A.2d 256 (1975), and Paull v. Paull, 384 Pa. 2, 119 A.2d 93 (1958). However, these cases merely stand for the proposition -- irrelevant here -- that courts should not decide sua sponte issues not raised, briefed and argued by the parties.

6. We have jurisdiction under 28 U.S.C. SS 1291 and 2253; our review is plenary, Doctor v. Walters, 96 F.3d at 678.

## II. DISCUSSION

### A. General Principles

All claims that a petitioner in state custody attempts to present to a federal court for habeas corpus review must have been fairly presented to each level of the state courts, 28 U.S.C. S 2254(b); O'Sullivan v. Boerckel, 119 S. Ct. 1728, 1734 (1999) ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts,"7); Doctor, 96 F.3d at 678. Thus, except as we discuss below, and except for petitions which can be denied on the merits, 8 federal courts refrain from addressing the merits of any claim raised by a habeas petitioner that was not properly exhausted in state court, Coleman v. Thompson , 501 U.S. 722, 750 (1991). "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights." Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992). The burden of establishing that such claims were fairly presented falls upon the petitioner. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). Federal courts will dismiss without prejudice claims that have not been properly presented to the state courts, allowing petitioners to exhaust their claims.

Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims.

_____

7. In Boerckel, the Court held that a petitioner had to present claims forming the basis of his federal habeas petition to the Illinois Supreme Court even though Illinois (like Pennsylvania) had only a discretionary review of intermediate appellate court decisions and was apparently rather selective about the cases it actually reviewed. There, the petitioner
had unsuccessfully attempted to argue a miscarriage of justice under Schlup v. Delo, 513 U.S. 298, (1995), by presenting evidence that he

claimed showed that two others were actually responsible for the crime he had been convicted of. 119 S.Ct. at 1731.

8. Pursuant to 28 U.S.C. S 2254(b)(2), a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust" available state remedies.

O'Sullivan v. Boerckel. If, however, state procedural rules bar a petitioner from seeking further relief in state courts, "the exhaustion requirement is satisfied because there is `an absence of available State corrective process.' 28 U.S.C. S 2254(b). McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). Even so, this does not mean that a federal court may, without more, proceed to the merits. Rather, claims deemed exhausted because of a state procedural bar are procedurally defaulted, and federal courts may not consider their merits unless the petitioner "establishes`cause and prejudice' or a `fundamental miscarriage of justice' to excuse the default." Id. See also Coleman, 501 U.S. at 731.9

B. General Principles Applied To Lines

We conclude that Lines did not fairly present any of his claims to the Pennsylvania Supreme Court. Although we agree with Lines that it would now be futile for him to return to state court and attempt to exhaust his claims, we do not agree with him that a federal court may therefore address his claims on the merits. Rather, Lines' claims are procedurally defaulted because he is barred by state law from seeking further review of his claims in state court. Since Lines can not demonstrate cause and prejudice for the default, and since refraining from addressing the merits of his claims will not result in a fundamental miscarriage of justice, his petition should have been dismissed with prejudice. Although Judge Debevoise concludes in his

_____

9. The considerable confusion swirling around habeas review of state convictions is exacerbated by the interrelationship of procedural default and exhaustion. See Coleman v. Thompson, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies `available' to him"); McCandless, 172 F.3d at 263 ("because McCandless is procedurally barred from asserting these claims in state court, his claims are considered exhausted due to procedural default"); Grey v. Hoke, 933 F.2d 117, 120-121 (2d Cir. 1991) (because petitioner's claims would be procedurally barred by state law, no purpose would be served by making him return to state court; thus, "we hold that petitioner no longer has `remedies available' . . . and that he has met the statutory exhaustion requirements for presenting a habeas petition to the federal courts").

dissent that our holding in Doctor requires that we excuse Lines' default, we conclude that Doctor is inapposite and does not control our analysis here.

C. Lines' Direct Appeal

As noted above, Lines raised the following substantive issues in his direct appeal to the Pennsylvania Superior Court:

> 1. Did the attorney for the Commonwealth, in his closing presentation, continuously express his personal opinions of the evidence so as to deprive the appellant of a fair trial?
>
> 2. Did the Commonwealth commit prosecutorial misconduct in failing to disclose exculpatory evidence concerning its star witness, failing to comply with discovery rules, and failing to correct perjured testimony of the star witness, thus requiring a new trial?
>
> 3. Was the Defendant-Appellant denied effective assistance of counsel when defense counsel allowed the admittance of hearsay statements without objection, failed to properly prepare for trial and conduct an independent defense investigation, failed to utilize character witness testimony, and failed to develop and present a coherent and cogent theory of defense?

Appellant's Brief to the Superior Court at 2. After the Superior Court dismissed Lines' appeal pursuant to Pennsylvania's fugitive forfeiture rule, Lines filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court in which he challenged only the Superior Court's application of the forfeiture rule. His Petition for Allowance of Appeal stated the following two grounds for relief under the heading, "QUESTIONS PRESENTED FOR REVIEW":

> 1. Did the trial court have the discretion to hear the post-trial motions of a defendant who was briefly absent during the pendency of post-trial motions but who was present for all the hearings on the post-trial motions?

> 2. Is a defendant who was a fugitive for a brief time

during the pendency of his post-trial motions but present throughout all post-trial hearings and the appeal process, forever barred from appellate review?

In the section of the Petition captioned: "CONCISE STATEMENT OF THE CASE," Lines outlined the circumstances of his flight during jury deliberations, his subsequent apprehension, the Commonwealth's Motion to Quash based upon his fugitive status, and the trial court's decision on the merits of his post-verdict claims. In doing so, he stated that he had "asked the [trial] Court to review" the three substantive grounds set forth above, and he reiterated each of those claims.10 However, in the seven and one-half pages in which he set forth his "CONCISE STATEMENT OF REASONS RELIED UPON FOR ALLOWANCE OF APPEAL," Lines presented only his challenge to the Superior Court's application of the fugitive forfeiture rule. He did not set forth any of the substantive claims he had relied upon in his brief to the Superior Court, nor did he discuss his underlying claims at any point in his Petition for Allowance of Appeal.11

Rule 1115(a) of the Pennsylvania Rules of Appellate Procedure12 prescribes the proper method for presenting an issue to the Pennsylvania Supreme Court. It states that a Petition for Allowance of Appeal must contain, inter alia:

> (3) The questions presented for review. . . . The statement of questions presented will be deemed to include every subsidiary question fairly comprised therein. Only the questions set forth in the opinion, or fairly comprised therein, will ordinarily be considered by the court in the event an appeal is allowed. . . .

> (5) A concise statement of the reasons relied on for allowance of an appeal.

_____

10. Petition for Allowance of Appeal at 3-4.

11. See Petition for Allowance of Appeal at 6-13.

12. The effective date of this version of Rule 1115, which is still current,
was June 2, 1979.

13

(emphasis added).13 Rule 1115(c) provides:

> All contentions in support of a petition for allowance of appeal shall be set forth in the body of the petition as

provided by Paragraph (a)(5) of this rule. Neither the briefs below nor any separate brief in support of a petition for allowance of appeal will be received, and the Prothonotary of the Supreme Court will refuse to file any petition for allowance of appeal to which is annexed or appended any brief below or supporting brief.

Finally, Rule 1115(d) provides as follows:

The failure of a petitioner to present with accuracy, brevity, and clearness whatever is essential to a ready and adequate understanding of the points requiring consideration will be a sufficient reason for denying the petition.

The Pennsylvania Supreme Court strictly adheres to the letter of these rules and will not address claims that are not properly asserted in a Petition for Allowance of Appeal. Commonwealth v. Rush, 522 Pa. 379, 386-387, 562 A.2d 285, 288 (1989), and cases cited therein. The Court has also emphasized that "all claims appellant wishes to raise must be set out in his brief and not merely incorporated by reference." Commonwealth v. Edmiston, 535 Pa. 210, 238 n.3, 634 A.2d 1078, 1092 n.3 (1993). See also Rule 2116(a).

As noted above, Lines challenged only the Superior Court's application of the fugitive forfeiture rule in the appropriate section of his Petition for Allowance of Appeal to the Pennsylvania Supreme Court. The trial court's opinion denying Lines' post-trial motions (which include the

_____

13. We emphasize "ordinarily" because the wording of Rule 1115(a) clearly suggests that, in an appropriate case, an appellant may include issues other than those relied upon by the Superior Court in the "CONCISE STATEMENT OF REASONS RELIED UPON FOR ALLOWANCE OF APPEAL" portion of a Petition for Discretionary Review to Pennsylvania's Supreme Court. Therefore, we conclude that Lines had an opportunity to include his substantive claims in his Petition for Allowance of Review under the unique circumstances of his case.

14

questions raised in the Superior Court) was appended to the petition, along with Superior Court's opinion. In addition, Lines' "Statement of the Case" in his Petition for Allowance of Appeal listed the questions raised in the Superior Court. However, Lines did not attempt to incorporate the issues discussed by the trial court by reference or otherwise, and the trial court's opinion does not fully state the substance of Lines' legal argument.

Furthermore, it is clear that the Pennsylvania Supreme
Court would not have addressed Lines' substantive claims
if he had merely attempted to incorporate them by
reference. See Edmiston, 535 Pa. at 238 n.3 ("Appellant also
`incorporates by reference' claims in his post-trial motions
as though set forth in his brief at length and requests this
court to consider them in terms of ineffectiveness of trial
counsel. We refuse to do so in that all claims appellant
wishes us to consider must be set out in his brief and not
merely incorporated by reference").

We therefore, conclude that Lines did not "fairly present"
to the Pennsylvania Supreme Court any of the claims he
raised on direct appeal.

D. Claims Not Raised on Direct Appeal

Lines concedes that his severance claim was not raised
on direct appeal; nor was it presented in his PCRA petition.
Lines also presents a Confrontation Clause claim in his
habeas petition. Although this claim was not expressly
raised on direct appeal to the Superior Court, Lines argues
that it is subsumed within the hearsay argument which he
presented to the Superior Court.14 However, even if Lines'
hearsay argument sufficiently presented his Confrontation
Clause claim, the hearsay argument, like the rest of his
claims on direct appeal, was never fairly presented to the
Pennsylvania Supreme Court.

In sum, not one of Lines' claims was fairly presented to

_____

14. The Confrontation Clause is made applicable to the states through
the Fourteenth Amendment and provides: "In all criminal prosecutions,
the accused shall enjoy the right . . . to be confronted with the
witnesses

against him." U.S. Const. amend. VI.

15

the Pennsylvania Supreme Court. As a result, he did not
exhaust any of his claims. O'Sullivan v. Boerckel, 119 S.Ct.
at 1733.

III. Futility and Procedural Default

Pursuant to 28 U.S.C. S 2254(b)(1), exhaustion is excused
if a return to state court would be futile because of "an
absence of available State corrective process[,] or ...
circumstances exist that render such process ineffective to
protect the rights of the applicant." "Futility" exists where:
"a state's highest court has ruled unfavorably on a claim

involving facts and issues materially identical to those undergirding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field," Allen v. Attorney General of Maine, 80 F.3d 569, 573 (1st Cir. 1996); where the state provides no means of seeking the relief sought, Wallace v. Cody, 951 F.2d 1170, 1172 (10th Cir. 1991), Dawan v. Lockhart, 980 F.2d 470, 475 (8th Cir. 1992); or where the state courts have failed to alleviate obstacles to state review presented by circumstances such as the petitioner's pro se status, poor handwriting and illiteracy, Hollis v. Davis, 941 F.2d 1471, 1473-1475, 1479 (11th Cir. 1991), cert. denied, 503 S.Ct. 938 (1992).

> If an appropriate remedy does not exist or its utilization is frustrated by the state system. . .[t]he deference accorded the state judicial process must give way to the primary role of the federal courts to redress constitutional deprivations. . . . If it appears that the prisoner's rights have become an "empty shell" or that the state process is a "procedural morass" offering no hope of relief, then the federal courts may excuse the prisoner from exhausting state remedies and may directly consider the prisoner's constitutional claims.

Hankins v. Fulcomer, 941 F.2d 246, 249-250 (3d Cir. 1991). Accordingly, we have held that exhaustion is not required if there is inordinate delay in state procedures, id. at 250, or if state officials have obstructed the petitioner's attempts to obtain state remedies, Mayberry v. Petsock , 821 F.2d 179 (3d Cir.), cert. denied, 484 U.S. 946 (1987).

16

As we noted in Doctor, "futility" is also established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Doctor, 96 F.3d at 681; Lambert v. Blackwell, 134 F.3d 506, 518-519 (3d Cir. 1997). Lines' assertion of futility here is based upon the unavailability of further state process. We do not excuse exhaustion in this context unless state law clearly forecloses state court review of claims which have not previously been presented to a state court. Toulson v. Beyer, 987 F.2d 984, 988-989 (3d Cir. 1993).

> If the federal court is uncertain how a state court would resolve a procedural default issue, it should dismiss the petition for failure to exhaust state remedies even if it is unlikely that the state court would consider the merits to ensure that, in the interests of comity and federalism, state courts are given every opportunity to address claims arising from state proceedings.

Doctor, 96 F.3d at 681 (emphasis added), see also Lambert, 134 F.3d at 516. The fact that it is merely unlikely that further state process is available is therefore insufficient to establish futility:

> [I]f we permitted such a prediction to constitute the type of futility which would allow a federal court to excuse exhaustion, we would undermine the exhaustion doctrine. Although exhaustion is often cumbersome, and may appear to require duplicative expenditure of judicial resources on claims that frequently have no merit, the doctrine is premised on firmly entrenched principles of comity. We are not free to disregard those principles for the sake of expediency or occasional efficiency.

Gibson v. Scheidemantel, 805 F.2d 135, 141 (3d Cir. 1986). See also Banks v. Horn, 126 F.3d 206, 213 (3d Cir. 1997) (enactment of the Antiterrorism and Effective Death Penalty Act "which overall is intended to reduce federal intrusion into state criminal proceedings, reenforces" that federal courts ought to be reluctant to conclude that resort to state courts would be futile.). Thus, "[i]n questionable cases it is better that the state courts make the determination of

17

whether a claim is procedurally barred." Id . Accordingly, we must determine if we can conclude with certainty that the courts of Pennsylvania would no longer entertain Lines' substantive claims for relief.

Lines filed his Petition for Allowance of Appeal more than seven years ago. We think it is obvious that he could not successfully amend a petition that has now been denied for seven years and include within it claims that he could have included when he first filed the petition.15 Thus, under Pennsylvania law, the only avenue that may be available to Lines is a second petition under the PCRA. Thus, we turn to the provisions of the PCRA to see if Lines canfile a second collateral attack in the state courts.16

_____

15. See Caswell, 953 F.2d 853, 861 (3d Cir. 1992).

16. Pennsylvania has recently modified the fugitive forfeiture rule, and escape no longer results in an automatic forfeiture of one's right to appeal a conviction, or to file a petition under the PCRA. See In re. J.J.,

540 Pa. 274, 656 A.2d 1355, 1362–1363 (1995). However, in Commonwealth v. Huff, 540 Pa. 535, 658 A.2d 1340 (1995), the

Pennsylvania Supreme Court limited the retroactive application of new rules of law to cases pending at the time the new rule is announced. Commonwealth v. Cabeza, 503 Pa. 228, 469 A.2d 146 (1983); Commonwealth v. Selby, 547 Pa. 31, 688 A.2d 698, 700 (1997). The Court has clearly stated that new interpretations of law are "not to be interpreted to mean that once a decision has been made at the final stage of appeal, . . . that decision is subject to review, forevermore, should the law be changed." Commonwealth v. Ahearn, 357 Pa. Super. 404, 407, 516 A.2d 45, 46 (1986). Lines' appeal became final three years before J.J. and Huff were decided, and Lines can not now obtain the benefit of those decisions in the courts of Pennsylvania. Moreover, in Commonwealth v. Deemer, 550 Pa. 290 (1997), the Supreme Court held that fugitives stand in the same position as appellants who have not absconded. Thus,

> a fugitive who has returned to the jurisdiction of the court should be allowed to exercise his post-trial rights in the same manner he would have done had he not become a fugitive. . . . In short, a fugitive who returns to court should be allowed to take the system

of

> criminal justice as he finds it upon his return.

550 Pa. at 295-6 (emphasis added). Thus, the Pennsylvania Supreme Court would not give Lines the benefit of the change in the law even if Lines could somehow once again challenge the Superior Court's application of the fugitive forfeiture doctrine to him.

18

42 Pa. C.S.A. S 9545(b)(1) limits the availability of PCRA relief. It states:

> Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim . . . .
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right  that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

Under section 9545(b)(3), a prior petition becomesfinal for PCRA purposes "at the conclusion of direct review,

including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." Commonwealth v. Banks, ___ Pa. ___, ___, 726 A.2d 374, 375 (1999). Under Banks, it is now clear that the one year limitation applies to all PCRA petitions including a second petition, no matter when the first was filed. 17

_____

17. In Banks, the Pennsylvania Supreme Court held that the time restrictions for seeking relief under Pennsylvania's Post Conviction Relief

Act are jurisdictional. Prior to Banks there was some doubt as to the proper scope and application of the one year limitations period under the amended PCRA. In Commonwealth v. Thomas, ___ A.2d ___, 1998 WL 648515 (Pa. Super. September 16, 1998), the Superior Court expressly rejected two possible interpretations of this period of limitations: that a

second or subsequent PCRA petition is timely if thefirst PCRA petition was filed by January 16, 1997, one year after the effective date of the 1995 amendments; and that all second or subsequent PCRA petitions are timely so long as the first PCRA petition wasfiled either one year before or one year after the effective date of the 1995 amendments. The court stated instead, "we hold that it was the intention of the legislature

19

Clearly, more than a year has passed since Lines' judgment of conviction became final18 and none of the aforementioned exceptions to the limitations period applies to Lines' claims. He does not allege that improper governmental interference or previously unknown facts prevented him from asserting them in state court in a timely manner, nor does he base his claims upon the assertion of a new constitutional right.

Moreover, 42 Pa. C.S.A. S 9543(a)(3) provides that claims raised in a PCRA petition must not have been "previously litigated or waived." Section 9544 defines those terms as follows:

> (a) Previous litigation. -- For purpose s of this subchapter, an issue has been previously litigated if:
> . . .
>
> (2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or
>
> (3) it has been raised and decided in a proceeding

> collaterally attacking the conviction or sentence.
>
> (b) Issues waived. –– For purposes of th is subchapter, an issue is waived if the petitioner could have raised it

_____

to permit an otherwise untimely first PCRA petition to be filed within one year following the effective date of the 1995 PCRA amendments, but that exception was not intended to apply to subsequent petitions regardless of when a first petition was filed." Id . at *3.

Moreover, the Pennsylvania Supreme Court has now clearly stated that the PCRA is the only method of seeking review of a conviction after direct appeal, and that common law writs that were previously available under state law have been subsumed within the PCRA. See Commonwealth v Ahlborn, 548 Pa. 544, 549 ("The PCRA specifies that it is the sole means of obtaining collateral relief and that it supersedes common law remedies.")

18. Since Lines apparently did not seek certiorari to the United States Supreme Court, the judgment against him became final ninety days after October 28, 1992, the date on which the Pennsylvania Supreme Court denied Lines' petition for allowance of appeal. See Commonwealth v. Perry, 716 A.2d 1259, 1261 (Pa. Super. 1998).

> but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.

When Lines filed his first PCRA petition he was represented by counsel other than trial counsel. Therefore, he could have raised the issue of trial counsel's ineffectiveness in failing to move for a severance in his first PCRA petition. See Commonwealth v. Griffin, 537 Pa. 447, 454 (1994) (a claim of ineffectiveness of counsel under the PCRA must be raised at the earliest stage in the proceedings after petitioner is no longer represented by allegedly ineffective counsel). Under Pennsylvania law Lines could attempt to challenge the stewardship of PCRA counsel even though he is not guaranteed the right to counsel to collaterally attack his conviction under the United States Constitution. See Commonwealth v. Albrecht, 554 Pa. 31, 43 (1999) ("we have never found our power of review, and if necessary, remedy deficiencies of counsel at the post-conviction stage circumscribed by the parameters of the Sixth Amendment."). However, the only vehicle for now doing so is a second P.C.R.A. petition. As we noted above, the period for filing such a petition has long since run, and the courts of Pennsylvania therefore no longer have jurisdiction to entertain a successive P.C.R.A. petition. Banks, 726 A.2d at 376 ("the issue . . . is one of

jurisdiction. . ."). Accordingly, we conclude that it would be futile for Lines to return to state court in an effort to attempt to bring a second PCRA proceeding raising the unexhausted claims he has included in his federal habeas petition.

Thus, although "federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that a claim is procedurally barred," Banks v. Horn, 126 F.3d at 213, the aforementioned considerations combine to convince us that Lines is now "clearly foreclosed" from further state court review of his claims. As a result, exhaustion would be futile and is excused. Put another way, based upon the futility of requiring Lines to cure his procedural default, we will consider his claims exhausted because "there are no state remedies available to him." Coleman, 501 U.S. at 732.

As noted above, it does not necessarily follow, however, that Lines is entitled to an adjudication of the merits of his unexhausted federal habeas claims merely because it is now futile to attempt to raise them in state court. A finding of futility merely eliminates the procedural pretense of requiring a federal habeas petitioner to return to an unavailable state forum for nonexistent relief. Futility, without more,19 does not mean that the federal courts may proceed to the merits of the petitioner's claims. As the court said in Whittlesey v. Circuit Court for Baltimore County, 897 F.2d 143, 146 (4th Cir.), cert. denied, 498 U.S. 922 (1990) (another escape case):

> That it may now be "futile" for Whittlesey to await completion of his Florida sentence to challenge his Maryland conviction begs the question of how that futility has come about. The equitable principles governing habeas relief will not permit Whittlesey to create a situation in which seeking state post-conviction relief is futile, and then invoke that same futility to avoid the exhaustion requirement.

When exhaustion is futile because state relief is procedurally barred, federal courts may only reach the merits if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Caswell, 953 F.2d at 861 (3d Cir. 1992). Unlike the petitioners in Doctor, Toulson, and Lambert, Lines is not asserting his actual innocence or facts that would suggest a "miscarriage of justice" in the context of federal habeas jurisprudence. See Schlup v. Delo, 513 U.S. 298 (1995). Accordingly, we must focus on whether Lines can establish "cause and prejudice" for his

default in state court. McCandless, 172 F.3d at 263. See also Caswell, 953 F.2d at 861 (citing Coleman, 111 S.Ct. at 2557 n.1).

_____

19. Typically, failures by the state: inordinate delay, failure to provide adequate remedies, and the like. See, e.g., Allen, Wallace, Hollis, Mayberry, and Hankins, supra.

IV. Cause and Prejudice

The only purported "cause" on this record is prior appellate counsel's failure to raise and fairly present all of Lines' substantive claims in state court. However, that is not sufficient. The "cause" required to excuse a procedural default must result from circumstances that are"external to the petitioner, something that cannot fairly be attributed to him" Coleman, 501 U.S. at 753. "Attorney inadvertence is not `cause' because the attorney is the petitioner's agent when acting or failing to act, in furtherance of the litigation, and the petitioner must `bear the risk' of attorney error. Coleman, 501 U.S. at 753. Lines does not argue that counsel on direct appeal was constitutionally ineffective for failing to present the substance of his claims to the Pennsylvania Supreme Court on direct appeal.[20] In fact, he argues that his attorney could not present those claims because the Superior Court never reached them. Given the unique circumstances facing original appellate counsel, that attorney can not be faulted for failing to include Lines' substantive claims in the Petition for Allowance of Appeal. After all, the decision that Lines wanted the Supreme Court to review did not address the merits of his claims. Accordingly, counsel limited Lines' Petition for Allowance of Appeal to the Superior Court's application of the fugitive forfeiture doctrine as that was the basis of the Court's dismissal of his appeal.[21] Thus, we are not now charged

_____

20. Inasmuch as a defendant is entitled to counsel on direct appeal, a successful challenge to the effectiveness of counsel's representation on direct appeal under Strickland can establish the necessary cause to excuse a procedural default. Coleman, 501 U.S. at 754 ("Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the state, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to the state interests that federal habeas review entails.")
21. This is not to suggest that counsel could not have included the substantive issues in his Petition for Allowance of Appeal. As we noted above, Doctor attempted exactly that when he appealed the Superior Court's application of the fugitive forfeiture rule although it appears

that
Doctor included his substantive claims in his brief, and that the substantive issue he briefed -- a due process violation -- did not fairly present his subsequent assertion that "a trial in absentia was never held." 96 F.3d at 680. As noted above, merely including a claim in the brief to the Supreme Court is not sufficient to fairly present the claim. However, we note what occurred in Doctor to contrast Doctor's appeal with Lines' appeal.

with evaluating the stewardship of original appellate counsel, or assessing blame for any "dereliction" on his part. Moreover, claims of constitutional ineffectiveness must themselves be exhausted by proper presentation to the state courts and here that was not even attempted. See Murray v. Carrier, 477 U.S. 478, 489 (1986). Thus, Lines has not demonstrated any "cause" for defaulting the claims raised on his direct appeal. Coleman, 501 U.S. at 753.

We reach the same conclusion with regard to Lines' severance claim. Lines can not now successfully argue that PCRA counsel was constitutionally ineffective in failing to include a severance claim in his PCRA petition, and he has not argued that counsel was ineffective in failing to raise it on direct appeal.22 Accordingly, we hold that the District Court did not err in dismissing Lines' habeas petition. Although the District Court's analysis differed from ours, the result is the same; although our analysis causes us to modify the District Court's relief.

In his thoughtful analysis, our dissenting colleague agrees with the majority's conclusion that it would be futile for Lines to return to state court. However, Judge Debevoise relies upon Doctor to conclude that "the peculiar state of Pennsylvania's fugitive forfeiture rule both at the time Lines committed his crime and at the time he sought review of his conviction. . . ." should excuse the exhaustion requirement. Dissent at 1. The parties also devote a substantial portion of their briefs to discuss the relevance of our holding in Doctor. However, we think that Doctor is inapposite to our analysis of the issues surrounding Lines' habeas petition.

V. Doctor v. Walters

Both Lines and the Commonwealth devote a substantial portion of their briefs to arguing whether Pennsylvania's fugitive forfeiture rule is an adequate and independent state ground under our holding in Doctor as applied to Lines.

_____

22. Moreover, as noted above, that claim of ineffectiveness would itself

have to be presented to the state courts in thefirst instance. Murray, supra.

However, despite the parties' focus upon Doctor , we conclude that our holding there is neither controlling nor helpful to the present inquiry; although the facts in Doctor are quite similar to the facts here.

Like Lines, Doctor fled during his bench trial on criminal charges. However, the trial court thereafter entered a guilty verdict against Doctor "apparently without conducting any further proceedings or attempting to inform Doctor, his attorney or the Commonwealth about its intention to enter a verdict." 96 F.3d at 678. Lines was not apprehended until five years later, and he was then formally sentenced on the guilty verdict that had been entered when he escaped. Doctor filed a direct appeal, and a state habeas corpus petition. However, the Pennsylvania Superior Court quashed his appeal pursuant to Pa. R. App. P. 1972(6), which allows an appellate court to quash an appeal "because the appellant is a fugitive." The Pennsylvania Supreme Court denied Doctor's Petition for Allowance of Appeal, and the United States Supreme Court denied his petition for a writ of certiorari. However, unlike Lines, Doctor attempted to present his underlying claims on direct appeal to the Pennsylvania Supreme Court as well as his challenges to the Superior Court's application of the fugitive forfeiture rule.23

Thereafter, Doctor filed a petition under 28 U.S.C.S 2254 in an attempt to get federal habeas relief from his state court conviction. Doctor's S 2254 petition included a claim that his conviction in absentia violated his Sixth Amendment right to a trial. The District Court dismissed Doctor's petition for failure to exhaust because the Sixth Amendment claim had not been presented in state court. Doctor argued that it was futile to return to state court to raise any unexhausted claims in a PCRA petition because the Pennsylvania courts had already determined that his

_____

23. We nevertheless concluded that Doctor had not fairly presented all of his substantive claims to the Pennsylvania Supreme Court because, although the brief that accompanied his Petition for Allowance of Appeal asserted a denial of his "Constitutional right to due process," we concluded that he had not adequately alleged "that a trial in absentia was never held," 96 F.3d at 680, as alleged in his federal habeas petition.

flight constituted a waiver of his right to appeal, and they therefore would not address any PCRA petition that he might file in an effort to exhaust his Sixth Amendment claim for federal habeas purposes. 96 F.3d at 680.

We affirmed the District Court's dismissal based upon the unexhausted claims in Doctor's petition. However, we also noted that Doctor could "resubmit a petition asserting only his exhausted claims." Therefore, "in the interests of judicial economy," we addressed the District Court's conclusion that application of Pennsylvania's fugitive forfeiture rule was an adequate and independent state rule barring federal habeas relief. Id. at 683.

We concluded that, under Pennsylvania law, Doctor could seek collateral relief by asserting his Sixth Amendment claim in a PCRA petition, see 42 Pa.C.S.S 9541– 46 (Supp. 1996), because "all avenues of direct appeal are clearly foreclosed." 96 F.3d at 682. However, we recognized that such collateral review was problematic both because he had not raised his Sixth Amendment claim on direct appeal, and because "under the fugitive forfeiture rule[Doctor] waived all rights to have his claims considered." Id. at 681. We noted, however, that Pennsylvania courts allowed for a "limited exception" to the application of the fugitive forfeiture rule when a petitioner could demonstrate either a "miscarriage of justice, which no civilized society can tolerate," or "actual innocence." Id . at 682 (citing Commonwealth v. Lawson, 519 Pa. 504, 549 (1988)). We concluded that the unique and rather bizarre circumstances surrounding Doctor's in absentia  conviction were such that we could not conclude with certainty that the Pennsylvania courts would not find a miscarriage of justice. 96 F.3d at 682 ("Doctor alleges facts that could support a finding that `the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate.' ").24

_____

24. In his S 2254 petition, Doctor claimed:"No record of trial of Absentia said to have been held on Aug. 29th 1986--I was not convicted in a court of law--I was never told on record or otherwise I was found guilty --I was never given any appeal rights before or after sentencing. No attorney is on record to have represented me in the mysterious absentia trial held--the trial transcripts in my case stop on page 129 at which time case was continued generally." Doctor , 96 F.3d at 679.

Moreover, an examination of Pennsylvania cases established that when Doctor escaped, Pennsylvania courts recognized that they had the discretion to hear an appeal

so long as custody of the fugitive-appellant "had been restored before the appellate process was ever initiated," id. at 685-6, as was the case there. Accordingly, we held that Pennsylvania's fugitive forfeiture rule was not an adequate and independent state rule, and that we could not say with certainty that the state courts would turn a deaf ear to Doctor's Sixth Amendment claim. Thus, we dismissed Doctor's petition and allowed him to attempt to exhaust his claim in state court. However, for all the reasons we have noted, it would be futile for Lines to do so. Moreover, Lines does not argue (nor can he) that our failure to address the merits of his claim would create the substantial risk of a miscarriage of justice that we found in Doctor .

VI. Conclusion

Accordingly, for the reasons set forth above, we conclude that the District Court did not err in dismissing Lines' federal habeas petition; and we will affirm, but modify, the District Court's order by dismissing the petition with prejudice.

27

DEBEVOISE, Senior District Judge, dissenting:

I have no quarrel with the majority opinion's thorough analysis of federal law governing exhaustion, futility and cause and prejudice or with their analysis concerning Lines's right to further review of his constitutional claims under Pennsylvania procedural law. It is my view, however, that these analyses are largely irrelevant in the present case. By reason of the peculiar state of Pennsylvania's fugitive forfeiture rule both at the time Lines committed his crime and at the time he sought review of his conviction (i) exhaustion was excused from the outset because state law foreclosed review of any of his claims and (ii) flight did not constitute a procedural default requiring a cause and prejudice review. The reasoning of Doctor v. Walters, 96 F.3d 675(3d Cir. 1996) compels this result.

The majority opinion sets forth the governing law:

> Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims. O'Sullivan v. Boerckel. If, however, state procedural rules bar a petitioner from seeking further relief in state courts, "the exhaustion requirement is satisfied because there is `an absence of available State corrective process.' 28 U.S.C. S 2254(b). McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). Even so, this does not mean that a federal court may, without more, proceed to the merits. Rather, claims deemed

> exhausted because of a state procedural bar are
> procedurally defaulted, and federal courts may not
> consider their merits unless the petitioner "establishes
> `cause and prejudice' or a `fundamental miscarriage of
> justice' to excuse the default." Id. See also Coleman,
> 501 U.S. at 731.

Slip Op. at 10-11. (Footnote omitted.)

Lines became a fugitive on October 10, 1986 and was
convicted in absentia. He was apprehended on December
21, 1986, pursued post-verdict motions and was sentenced
to life imprisonment on July 19, 1991. Thereafter, as
recited in the majority opinion, he pursued his appeal to
the Pennsylvania Superior Court, his Petition for Allowance
of Appeal to the Pennsylvania Supreme Court (denied

28

October 28, 1992), his PCRA petition (filed March 31, 1993)
and unsuccessful appeals from denial of the PCRA petition.

During and after the time frame encompassed by these
proceedings Pennsylvania's fugitive forfeiture rule, as
interpreted by Pennsylvania's Supreme Court, went through
a series of transformations. The applicable procedural rule,
Pa. R. App. P. 1972(6), provides in relevant part that "any
party may move: . . . (6) [t]o continue generally or to quash
because the appellant is a fugitive. . . ." In Doctor this court
had occasion to determine the manner in which the
Pennsylvania Supreme Court construed this rule as of June
24, 1986, the date when Doctor had fled from his criminal
trial. Lines fled on October 10 of the same year, and there
is nothing to suggest that Pennsylvania's law on the subject
changed during the less than four months interval between
his and Doctor's flights. The state of the law at relevant
times was critical in Doctor, and for the same reasons it is
critical in the present case.

Doctor had submitted a mixed habeas corpus petition,
containing exhausted and unexhausted claims. Following
the dictate of Rose v. Lundy, 455 U.S. 509, 102 S. Ct.
1198, 71 L. Ed.2d 379 (1982), this court affirmed the
district Court's dismissal of the petition. The district court,
however, had dismissed the petition not only on failure to
exhaust grounds. It also found that the Pennsylvania
courts' refusal to consider the merits of Doctor's direct
appeals based on the fugitive forfeiture rule constituted
application of an independent and adequate state
procedural rule. Doctor's failure to comply with that rule
constituted a procedural default, requiring dismissal of the
habeas petition since he had not shown cause and
prejudice. Anticipating that Doctor might file a new petition

containing only exhausted claims and that he would again
be faced with the procedural default contention, this court
addressed the merits of that defense.

A habeas petitioner is entitled to federal review of a
procedurally defaulted claim only if he can demonstrate
cause for the procedural default and prejudice resulting
therefrom. Doctor, 96 F.3d at 683. However,"[a] state rule
provides an independent and adequate basis for precluding
federal review of a state prisoner's habeas claim only if: (1)

the state procedural rule speaks in unmistakable terms; (2)
all state appellate courts refused to review the petitioner's
claims on the merits; and (3) the state courts' refusal in
this instance is consistent with other decisions." Id. at 683–
684.

Doctor analyzed two pre–1986 Pennsylvania Supreme
Court decisions applying the fugitive forfeiture rule.
Commonwealth v. Galloway, 460 Pa. 309, 333 A.2d 741
(1975) (There was no basis to dismiss a formerly fugitive
defendant's appeal because he was in custody when the
case was actually argued and would therefore be subject to
the jurisdiction of the court and thus responsive to any
judgment entered) and Commonwealth v. Passaro , 504 Pa.
611, 476 A.2d 346 (1984) (Petition of defendant who
absconded during appeal to reinstate appeal after recapture
denied). Doctor also noted that after Galloway and prior to
1986 Pennsylvania's intermediate courts consistently
recognized their discretion to hear a properly filed appeal as
long as the criminal defendant had returned to the
jurisdiction before the appeal was dismissed.

Based on this review of the state of Pennsylvania law as
it existed in 1986, this court held that as of that date "it
was not `firmly established' that Pennsylvania courts lacked
the discretion to hear an appeal first filed after custody had
been established," and consequently "the state courts in
this case did not rely on an `adequate' procedural rule to
deny petitioner a review of his appeal on the merits."
Doctor, 96 F.2d at 686. In these circumstances Doctor was
not required to establish cause and prejudice in the event
he filed a habeas petition containing only exhausted claims.

In 1992 the Pennsylvania Supreme Court firmly closed
the door to any appeals by a fugitive defendant, stating:

> A defendant's voluntary escape acts as a per se
> forfeiture of his rights of appeal, where the defendant
> is a fugitive at any time after post–trial proceedings
> commence. Such a forfeiture is irrevocable and

continues despite the defendant's capture or voluntary return to custody. Thus, by choosing to flee from justice, appellant has forever forfeited his right to appeal.

Commonwealth v. Jones, 530 Pa. 536, 541, 610 A.2d 439, 441 (1992). This was the state of the law when the Superior Court held that the trial court erred in failing to quash Lines's post-verdict motions and that Lines had"forever forfeited his right to appeal by electing to become a fugitive after post-trial procedures have begun." Commonwealth v. Lines, 415 Pa. Super. 438, 443, 609 A.2d 832, 834, allocatur denied, 532 Pa. 662, 618 A.2d 983 (1992). It was the state of the law when the Supreme Court denied Lines's Petition for Allowance of Appeal.

Subsequently the Pennsylvania Supreme Court again revisited the fugitive forfeiture rule, holding that the sanction for absconding must be a reasonable response to a defendant's flight, and there must be some rational link between the flight and the appellate process to justify imposing a forfeiture on a defendant. In re J.J. , 540 Pa. 274, 656 A.2d 1355 (1995); Commonwealth v. Huff , 540 Pa. 535, 658 A.2d 1340 (1995). Pennsylvania's rule limiting retroactive application of new rules of law to cases pending at the time the new rule is announced precluded and still precludes Lines from taking advantage of this change in the law.

Whether Lines is confronted with a procedural default and must establish cause and prejudice must be determined on the basis of Pennsylvania's fugitive forfeiture rule as it existed in 1986 when he became a fugitive. As stated in Doctor, "We must decide whether[the fugitive forfeiture rule] was firmly established and regularly applied, not in 1993 when the Supreme Court relied on it, but rather as of the date of the waiver that allegedly occurred when Doctor escaped in 1986" at 684. As recited above, in 1986 when Lines escaped the fugitive forfeiture rule was not firmly established and regularly applied. Consequently, his petition is not subject to a procedural default defense based on the fugitive forfeiture rule and he is not required to establish cause and prejudice.

On the other hand, when Lines sought relief from his conviction in the state courts Pennsylvania law had changed. By that time the fugitive forfeiture rule, as interpreted by the Supreme Court, had become an impenetrable barrier to relief of any sort in the state courts.

Not only were an appeal and a PCRA petition futile, there was a total absence of available state corrective process of any sort.1 In these circumstances exhaustion is excused and Lines must be permitted to assert in a habeas petition both the grounds he raised in his abortive appeal to the Superior Court and the ineffective assistance of counsel claim based on the failure of trial counsel to move for severance which he did not raise in any Pennsylvania court.

The same impenetrable barrier prevailed when Doctor sought relief in the state courts. In his case, however, this court detected a small chink in this barrier, namely, an appeal or a PCRA petition in which the once fugitive petitioner seeking relief from a waiver "can demonstrate a `miscarriage of justice, which no civilized society can tolerate.' " Doctor, 96 F.2d at 682. This court rejected Doctor's futility contention stating "[w]e cannot conclude that there is no chance that the Pennsylvania courts would find a miscarriage of justice sufficient to override the waiver requirements and permit review under PCRA." Id. at 683. Doctor contended that lack of a trial even in absentia violated his Sixth Amendment rights. This court opined that the Pennsylvania courts might consider this a miscarriage of justice claim which would override a fugitive forfeiture waiver. It would follow that had this court not found that Doctor's unexhausted claim asserted miscarriage of justice, it would have concluded that it would have been futile to require him to return to the

_____

1. See 28 U.S.C. S 2254(b)(1):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in courts of the State; or
>
> (B)(i) there is an absence of available State corrective process;
>
> or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(Emphasis added.)

Pennsylvania courts and exhaustion would have been

excused.

In the present case Lines does not assert any claims which might be characterized as a "miscarriage of justice, which no civilized society can tolerate." Thus the reasoning of Doctor compels the conclusion that exhaustion was excused in the present case because it would have been futile to require that Lines exhaust state remedies. 26

It is my view that it is unnecessary to determine the extent to which Lines raised his various claims in one or another of his abortive state court proceedings. From the outset under the Pennsylvania Supreme Court's then prevailing application of the fugitive forfeiture rule, Lines had no right to appeal or to post conviction relief of any sort. The fact that he did seek state court relief is of no moment. It was all an exercise in futility which he had no obligation to pursue. In these circumstances he should be permitted to assert in the district court all the claims set forth in his S 2254 petition.

For the reasons set forth above I dissent from the majority opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

26. In Doctor, the petitioner had in fact sought to present his other federal claims to the Pennsylvania Superior and Supreme Courts, only to have them dismissed on the basis of the fugitive forfeiture rule. Thus there was no need for this court to consider whether failure to have raised those non-miscarriage of justice claims in the state courts would have been excused as futile. After the Pennsylvania Supreme Court changed its interpretation of the fugitive forfeiture rule to make its application discretionary, failure of a fugitive to exhaust his state remedies could no longer be excused on futility grounds.

33