Mark A. KIRK, Petitioner,

v.

Thomas CARROLL, Warden, Respondent

No. CIV.A.02–345–JJF.

United States District Court, D. Delaware.

Jan. 30, 2003.

Mark A. Kirk, Pro Se Petitioner.

Thomas E. Brown, Esquire of the State of Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondent.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is a Petition under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (the "Petition") (D.I.1) filed by Petitioner, Mark A. Kirk. Also pending in this matter are Petitioner's Motion for Discovery (D.I.4), Petitioner's Motion to Amend his Support Memorandum (D.I.11) and Petitioner's Motion for Appointment of Counsel (D.I.19). For the reasons set forth below, the Court will deny the Petition, grant the Motion to Amend, and deny as moot the Motion for Appointment of Counsel and the Motion for Discovery.

### I. BACKGROUND

In 1997, following a bench trial, Petitioner was convicted in Delaware Superior Court of three counts of first degree felony murder, one count of third degree arson, two counts of first degree assault, and one count of third degree assault. Petitioner was sentenced to three mandatory life terms in prison plus twenty three years. The conviction and sentence were affirmed on direct appeal. *Kirk v. State*, No. 532, 1997, 1999 WL 415802 (Del. April 29, 1999).

Petitioner filed a motion for state post-conviction relief in the Delaware Superior Court pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure. On May 23, 2000, the Superior Court denied Petitioner's motion, and Petitioner appealed. *State v. Kirk*, ID No. 9612002650–R1 (Del.Super.Ct. May 23, 2000). On October 16, 2000 the Delaware Supreme Court affirmed this denial. *Kirk v. State*, No., 271, 2000, 2000 WL 1637418 (Del. October 16, 2000). Petitioner filed a second motion for state post-conviction relief in 2001. The Superior Court denied this second motion on June 25, 2001. *State v. Kirk*, ID No. 96120556–R2, 2001 WL 755942 (Del.Super. Ct. June 25, 2001). The Delaware Supreme Court affirmed this denial on February 12, 2002. *Kirk v. State*, No. 508, 2001, 2002 WL 256741 (Del. Feb. 12, 2002).

Petitioner has now filed the current Petition for federal habeas relief. Also pending in this matter are Petitioner's motion for discovery, motion to amend and motion for appointment of counsel.

### II. GOVERNING LEGAL PRINCIPLES

#### A. Exhaustion and Procedural Default

Pursuant to the federal habeas statute:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Grounded on principles of comity, the requirement of exhaustion of state court remedies ensures that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir.2000), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001).

■ To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Although a state prisoner need not "invoke extraordinary remedies" to satisfy exhaustion, he must fairly present each of his claims to the state courts. *Id.* at 844–45, 119 S.Ct. 1728. A claim has not been fairly presented unless it was presented "at all levels of state court adjudication." *Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir.2002). If a claim has not been fairly presented, and further state court review is procedurally barred, the exhaustion requirement is deemed satisfied because further state court review is unavailable. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir.2000), *cert. denied*, 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001). Although deemed exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160. In addition, where a state court refuses to consider a petitioner's claims because he failed to comply with an independent and adequate state procedural rule, his claims are

deemed exhausted but procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Werts*, 228 F.3d at 192. A federal court may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lines*, 208 F.3d at 160.

### B. Standards of Review

■ The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") mandates the following standards of review:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . .

28 U.S.C. § 2254(d). A federal court may issue a writ of habeas corpus under this provision only if it finds that the state court decision on the merits of a claim either: (1) was contrary to clearly established federal law, or (2) involved an unreasonable application of clearly established federal law. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### III. DISCUSSION

Petitioner articulates the following claims for relief: [1]

---

1. The Court derives Petitioner's claims from the Petition itself, as well as the memoran-

(1) Petitioner's statements were obtained in violation of his Fifth Amendment right to remain silent and were involuntary because they were coerced;

(2) Trial counsel rendered ineffective assistance of counsel because he failed to argue for suppression of statements at the suppression hearing as Petitioner requested;

(3) Trial counsel rendered ineffective assistance of counsel by arguing for a lesser felony in a felony murder trial;

(4) Trial counsel rendered ineffective assistance of counsel by failing to move for the recusal of the trial judge;[2]

(5) Trial counsel rendered ineffective assistance of counsel because he failed to retain a third expert;

(6) The Petitioner was denied his Sixth and Fourteenth Amendment right to a fair trial because the state presented falsified evidence;

(7) There was insufficient evidence to sustain the conviction; and

(8) The indictment was defective.

Respondent acknowledges that Petitioner has exhausted claims 1–2 and claims 4–7 and contends that these claims should be rejected on their merits. Respecting claim 3 for ineffective assistance of counsel and claim 8 for a deficient indictment, Respondent asserts that although these claims are excused from the exhaustion requirement, they are procedurally barred from federal habeas review because Petitioner failed to fairly present them to the Delaware Supreme Court on post-conviction appeal.

---

dum of law in support thereof and the amendment to the memorandum of law. (D.I. 1, 2, and 12.)

**2.** Although not addressed by the government, the Petitioner seems to assert judicial bias in both his ineffective assistance of counsel

## A. Petitioner's Statements

### 1. Invocation of Right to Remain Silent

Petitioner's first claim is that his statements should have been suppressed because they were obtained in violation of his Fifth Amendment right to remain silent. The Petitioner claims that during an interview on December 5, 1996 he invoked his right to silence, and therefore the statements following that invocation should have been suppressed. (D.I. 2 at 3; Opening Brief in Case No. 532, 1997 at 14–16). Petitioner was questioned by the police four times before he was arrested, twice on December 4, 1996 and twice on December 5, 1996. These interviews occurred at the police station. Petitioner left the police station on December 4 and returned voluntarily the following day. Petitioner received warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) on each day. The final interview on December 5 was videotaped and lasted five hours and forty-one minutes. In this interview Petitioner admitted pouring rum on the burner which started the fire that consumed the apartment building.

Petitioner claims that he asserted his right to remain silent at least two times during this last interview. Specifically, Petitioner asserts that he asserted his right to remain silent by the following statements:

A. I don't have anything to tell you. You don't believe me

. . .

---

claims and the claim that he did not have a fair trial. (D.I. 2 at 11, 16). The Court's analysis of both of these claims are addressed in the ineffective assistance of counsel section of this opinion.

A. You know what I really want to do is, if I'm going to be charged, just go ahead and get it over with.

M. You don't think you are going to remember anything

A. Just get it over with.

M. Have you remembered anything else?

A. Nothing. I can't.

Petition Appendix at A–1, A–2. Additionally, on direct appeal, Petitioner claimed that the following statements violated his right to remain silent.

A. I can't. Just take me away, please. Take me away.

M. I can't say anything good about you.

A. Don't say anything good about me. Just take me the fuck away.

M. Mark are you a bad person?

A. No.

M. Don't end it like this Mark. This is your opportunity.

. . .

Opening Brief in Case No. 532, 1997 at 14–15 (quoting Tr. of December 5, 1996 Interview at 118). Thereafter, the officers continued questioning the Petitioner and he admitted to pouring rum on the burner which started the fire that consumed the apartment building. The Petitioner claims that these statements invoked his right to remain silent and that any further questioning violated that right; therefore the statements following his invocation should be suppressed. The Delaware Superior Court, relying on *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) found that there was no clear invocation of the right to remain silent and therefore no constitutional violation. The court stated that the statements were not "a clear and unambiguous statement to cease the interview." *See* Transcript of the Suppression hearing 9/27/97 at 171.

The conviction was later affirmed by the Delaware Supreme Court.

■ In *Mosley,* the Supreme Court of the United States addressed whether there are circumstances in which the resumption of questioning is permissible after a person in custody has indicated that he wishes to remain silent. *See Michigan v. Mosley,* 423 U.S. 96 at 100–02, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). The Supreme Court in *Mosley* concluded that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored'" *Mosley,* 423 U.S. at 104, 96 S.Ct. 321. Under *Miranda,* the Supreme Court has held that if a "suspect indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda,* 384 U.S. at 473–74, 86 S.Ct. 1602. In this case it is not clear whether the Petitioner wished to remain silent. Considering the totality of the circumstances, the Court concludes that the Superior Court's finding that there was no clear invocation of the right to remain silent, and the Delaware Supreme Court's affirmance of that decision, was not contrary to clearly established federal law.

In *Davis* the Supreme Court examined an ambiguous invocation in the context of whether a suspect invoked his Sixth Amendment right to counsel. In that case the Supreme Court determined that the determination of whether a suspect had invoked his right to counsel is an objective one and the question is whether the suspect "articulated his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis,* 512 U.S at 459, 114 S.Ct. 2350. Circuit courts have held that this objective test is applicable to

invocations of the right to remain silent. *See e.g., United States v. Banks,* 78 F.3d 1190, 1197–98 (7th Cir.1996) · (applying *Davis* test to determine if right to remain silent was ambiguous or equivocal), *vacated on other grounds,* 519 U.S. 990, 117 S.Ct. 478, 136 L.Ed.2d 373 (1996); *Medina v. Singletary,* 59 F.3d 1095, 1100 (11th Cir.1995) (same); cf. *Burket v. Angelone,* 208 F.3d 172, 200 (4th Cir.2000) (in light of *Davis* trial court's admission of statement following his ambiguous statement invoking the right to remain silent was not contrary to clearly established federal law); *Barnes v. Johnson,* 160 F.3d 218, 224–25 (5th Cir.1998) (same), *cert. denied,* 526 U.S. 1118, 119 S.Ct. 1768, 143 L.Ed.2d 798 (1999); *United States v. Ramirez,* 79 F.3d 298, 305 (2d Cir.1996) (assuming that *Davis* applies to invocations to right to remain silent but not explicitly holding that it does); *United States v. Johnson,* 56 F.3d 947, 955 (8th Cir.1995) (citing *Davis* in analysis for determining whether the right to remain silent has been invoked).

The Court of Appeals for the Third Circuit has not decided whether *Davis* is applicable to invocations of the right to remain silent. However under § 2254(d)(1) the Court only needs to decide whether the Delaware Superior Court's decision and the Delaware Supreme Court's affirmance of the decision to admit Petitioner's statements was contrary to clearly established federal law as determined by the Supreme Court. In *Davis* the Supreme Court held that when an interrogator is faced with an ambiguous assertion of a right, they do not have to ask clarifying questions. *Davis,* 512 U.S. at 461, 114 S.Ct. 2350. In the instant case, the Petitioner stated "I don't have anything to tell you" and "I can't. Just take me away,

please. Take me away." The statement in *Davis* was "Maybe I should talk to a lawyer", which the Supreme Court found ambiguous. Additionally, in a similar case, the Fourth Circuit found that the admittance of statements following the statement "I don't think I should say anything," in the context of the right to remain silent was not contrary to established federal law as determined by the Supreme Court. *Burket v. Angelone,* 208 F.3d 172, 200 (4th Cir.2000). In sum, the Court concludes that the statements made by Petitioner did not amount to Petitioner invoking his right to remain silent, and therefore, the admission of the statements into evidence at Petitioner's trial was not contrary to clearly established federal law as determined by the Supreme Court. Accordingly, Petitioner's request for federal habeas relief as to this claim will be denied.

### 2. Coercion [3]

▮ Petitioner also claims that statements he made during the December 5, 1996 interview were involuntary because they were coerced. Specifically, Petitioner claims that police officers, during the final interview on December 5, 1996, told him that since he was not responding to their questions they were going to paint him as a "cold blooded killer." (D.I. 2 at 6, A–3 at 5). Additionally, Petitioner claims that the officers told him that he would face the death penalty during this interview unless Petitioner told them what they wanted. (D.I. 2 at 7, A–5 at 10, A–6 at 12). Also, Petitioner contends that he tried to leave the interview on three separate occasions and was met at the door by a police officer. (D.I. 2 at 7). As a result of this conduct by the police, Petitioner contends that he

---

**3.** It should be noted that the Respondent did not address this specific claim in its Answer to the habeas petition. However, this issue was presented to the Delaware Superior Court and was appealed to the Delaware Supreme Court, and therefore, the Court concludes that Petitioner has exhausted his state court remedies.

was coerced into giving certain statements. (D.I. 2 at 7).

The voluntariness of a confession is a mixed question of law and fact and is subject to independent analysis in a federal habeas proceeding, but a state's resolution of subsidiary factual issues on which voluntariness is based are entitled to a presumption of correctness. *See Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). The voluntariness of a confession must be judged on the totality of the circumstances with consideration given to factors such as: the length, location and continuity of the interrogation, the suspect's maturity, education, physical and mental health, and the failure, if any, of the police to advise the suspect of his rights. *United States v. Swint*, 15 F.3d 286, 289 (3d Cir.1994). Unless there is "police conduct causally related to the confession," the confession is considered voluntary. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In determining whether a confession was voluntary, the relevant inquiry is whether the confession was " 'the product of an essentially free and unconstrained choice by its maker,' that it was 'the product of a rational intellect and a free will' and that the appellant's will was not 'overborne.' " *Swint*, 15 F.3d at 289 (citations omitted). Therefore, using the presumptively correct factual findings of the state court, the Court will review de novo the voluntariness determination.

The Superior Court of Delaware, after the suppression hearing, found that Petitioner had been given his Miranda rights and had knowingly and voluntarily waived them. *State v. Kirk*, ID No. 9612002650–R1 at *3 (Del.Super.Ct. May 23, 2000) (citing Transcript of Suppression hearing 9/29/97 at 161–173). The Delaware Superior Court, reviewed the totality of the circumstances and determined that Petitioner's statements were voluntary. In conducting its analysis the Court stated:

> The Defendant was 35 years old at the time. The statement indicates that he was a graduate of a technical or vo-tech high school in Cape May. The Defendant had had previous police contacts and had gone through Miranda before. The Court reiterates that defendant returned voluntarily on the 5th ... also after freely leaving on the 4th, he consulted an attorney, Mr. Natalie ....

> Having reviewed the case law on the issue, the Court agrees with the State that while the length of the statement is a consideration, other factors must be considered in conjunction therewith.

> Was he held incommunicado? No.

> Was he offered cigarettes? Yes.

> Was he offered bathroom privileges? Yes.

> Was he offered soda? Yes.

> So on the issue of voluntariness, I find that the specific tactics used by the police in eliciting the statements involved here were not untoward in any way. The details of the interrogation show a persistence, as I said, but also show a consideration for the Defendant. And I also take into account the characteristics of the defendant, including his age, his education, and his prior police contacts.

9/27/97 Suppression Hearing Transcript at 171. The Court also found that the Petitioner was made aware of his Miranda rights and indicated that he understood them and wanted to continue. *See* 9/27/97 Suppression Hearing Transcript at 165. The Delaware Superior Court ultimately found that the statement was voluntary as a matter of law *Id.* Later, the conviction was affirmed on direct appeal by the Delaware Supreme Court in *Kirk v. State*, No. 532, 1997, 1999 WL 415802 (Del. April 29, 1997).

First, although the Petitioner contends that the police threatened him with the death penalty unless he told them what they wanted, this is an inaccurate characterization of the interview. In fact, in the interview, the Officer stated:

So you are sitting here. You're going to take a chance on flushing your life down the toilet, by not telling us the truth when you could tell us the truth and show us the real facts. That things we think really happened.

Tr. of December 5, 1996 Interview A–6 at 12. Based on the interview transcript, the Court finds that the Officers did not threaten the Petitioner or promise him leniency in exchange for the statements. The Court also finds that the Petitioner has failed to rebut the presumption of correctness accorded the state court's factual findings. In considering the voluntariness of Petitioner's statements, the Court has only the state Court's factual findings, the transcript of the police interviews and the suppression hearing transcript to consider.

First, the record supports that the Petitioner was given his Miranda warnings before he made the statements at issue. For example, in the December 5th interview the following exchange occurred:

P: Well let's get everything straightened out here. I'm just coming into this so I'm not privy to the conversations. You were read your Miranda warning, right?

A: Oh Yeah.

P: Your legal rights and all that? You understand that, is that correct?

A: Yes

P: OK. And you're OK with talking, you mind, OK, and we'll get this straightened out. Is that right?

A: Yes.

Transcript of December 5, 1996 Interview at 2 in Appellant's Appendix to Opening Brief in *Kirk v. State*, No. 271, 2000, 2000 WL 1637418 (Del. October 16, 2000) at A–11. Also, the Defendant was 35 years old, was educated at least through high school, had prior contact with the police, had consulted an attorney, and although the interview was five hours and forty-one minutes long, the Petitioner was given privileges such as cigarettes, soda and bathroom breaks. Additionally, the Court finds that there is no evidence on the record that the Petitioner attempted to leave and was prevented from doing so. Based on these circumstances, the Court cannot conclude that the totality of these factors overpowered Petitioner's will or produced a confession that was not voluntary. Accordingly, Petitioner's request for federal habeas relief as to this claim will be denied.

**B. Ineffective Assistance of Counsel**

In order to succeed on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-part test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The first prong of the *Strickland* test requires a petitioner to show that his or her counsel's errors were so egregious as to fall below an "objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. 2052. In determining whether counsel's representation was objectively reasonable, "the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. In turn, the petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91,

101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Under the second prong of *Strickland*, the petitioner must demonstrate that he or she was actually prejudiced by counsel's errors, meaning that there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 692–94, 104 S.Ct. 2052; *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir.1994) (citations omitted); *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir.1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Prejudice also includes a showing that counsel's errors deprived Petitioner of a fair or reliable trial. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Thus, a purely outcome determinative perspective is inappropriate. *Id.; Flamer v. State*, 68 F.3d 710, 729 (3d Cir.1995), *cert. denied*, 516 U.S. 1088, 116 S.Ct. 807, 133 L.Ed.2d 754 (1996). With this standard in mind, the Court will consider Petitioner's ineffective assistance of counsel claims.

**1. Failure of Trial Counsel to Argue for the Suppression of Statements**

Petitioner contends that his trial counsel was ineffective for failing to argue for the suppression of statements from his December 5, 1997 interview. Specifically, Petitioner contends that he equipped trial counsel with numerous facts and case authority to argue his claims, but counsel refused. (D.I. 2 at 10)

In reviewing Petitioner's claims, the Delaware Superior Court found that "Kirk's allegations are belied by the record. Counsel moved to suppress the statements, sought a hearing on the matter, cross-examined the State's witnesses, and argued zealously on Kirk's behalf at the hearing. Kirk's allegations of ineffective assistance of counsel have no merit." *State v. Kirk*, ID No. 9612002650–R1 at *3 (Del.Super.Ct. May 23, 2000).

The factual findings of a state court are presumed correct, unless Petitioner presents clear and convincing evidence otherwise. 28 U.S.C. § 2254(e)(1). After a thorough review of the record, the Court concludes that Petitioner has failed to rebut this presumption of correctness. Further, the Court concludes that the record adequately supports the state courts' findings.

The record indicates that trial counsel moved to suppress the statements from Petitioner's December 5, 1996 interview and renewed that motion to suppress on direct appeal to the Delaware Supreme Court. (Appellant's Opening Brief at 14 in *Kirk v. State*, No. 532, 1997, 1999 WL 415802 (Del. April 29, 1999)).

Because Petitioner's claim that counsel failed to move for suppression of his statements made at the December 5, 1996 interview is factually without merit, the Court concludes that Petitioner cannot establish that counsel's performance was deficient under *Strickland*. Accordingly, Petitioner's claim will be dismissed.

**2. Arguing for a lesser felony in a felony murder trial**

Petitioner contends that trial counsel rendered ineffective assistance of counsel because he argued for a lesser felony in a felony murder trial. (D.I. 2 at 10–11). The Court finds that Petitioner has failed to satisfy the exhaustion requirement with respect to this claim. In his first post-conviction appeal before the Delaware Supreme Court, Petitioner did not raise the claim that counsel was ineffective for arguing for a lesser felony. *See* Appellant's Opening Brief in *Kirk v. State*, No. 271, 2000, 2000 WL 1637418 at 4–7. Additionally, the Petitioner did not raise any ineffective assistance of counsel claims in his second post-conviction appeal.

The fact that Petitioner was complaining about certain aspects of his attorney's performance in his first post-conviction appeal did not put the state court on notice that he was complaining about other aspects of his counsel's representation i.e. the fact that counsel argued for a lesser finding of a felony in a felony murder trial. *See e.g. Gibson v. Scheidemantel,* 805 F.2d 135, 139 (3d Cir.1986) (finding no exhaustion of state remedies when an ineffective assistance of counsel claim made in state court was based on counsel's instructions and explanations regarding a plea bargain, and claim in federal court was that counsel was ineffective for failing to protect the juvenile status of the petitioner). Accordingly, Petitioner did not present his ineffective assistance of counsel claim that counsel argued for a finding of a lesser felony at a felony murder trial to any state court in Delaware. However, there is no longer an available state remedy for Petitioner to pursue. Under Delaware Superior Court Criminal Rule 61(i)(1), Petitioner cannot seek post-conviction relief, because more than three years have elapsed since his judgment of conviction became final. If a claim has not been fairly presented, and further state court review is procedurally barred, the exhaustion requirement is deemed satisfied because further state court review is unavailable. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001). Accordingly, the Court concludes that the exhaustion requirement is excused with respect to this claim.

■ Although deemed exhausted, this claim is considered procedurally defaulted. *See Lines,* 208 F.3d at 160. Petitioner's claim that counsel was ineffective for arguing for a lesser felony at a felony murder trial was not presented to any court in Delaware, therefore it is procedurally barred under the independent and adequate state ground of Delaware Superior Court Rule 61(b)(2) which requires petitioners to include in any motion for post-conviction relief all grounds that are our should be known to the Petitioner. Federal Courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In order to demonstrate cause for a procedural default, a petitioner must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Ineffective assistance of counsel constitutes cause, but only if it is an independent constitutional violation. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Petitioner, in reference to his ineffective assistance of counsel claims as a whole, stated, "this claim was raised in petitioner's first motion for post-conviction relief and on appeal thereof. Hence this ground has been exhausted." (D.I. 2 at 2). Petitioner neither acknowledges this default, nor offers any reasons to establish cause for the default. Petitioner has also failed to address the issue of prejudice or miscarriage of justice as they pertain to this ineffective assistance claim. However, since pro se petitions should be liberally construed, the Court will address the issues of cause, prejudice and miscarriage of justice.

■ The cause requirement can be met in an ineffective assistance of counsel claim by showing that counsel's errors amounted to a violation of the Sixth Amendment. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (cit-

ing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A Sixth Amendment violation occurs where a petitioner shows that his or her counsel's errors were so egregious as to fall below an "objective standard of reasonableness" and that he or she was actually prejudiced by counsel's errors. *Id.* at 687–88, 104 S.Ct. 2052; *Strickland,* 466 U.S. at 692–94, 104 S.Ct. 2052; *Deputy,* 19 F.3d at 1493 (citations omitted); *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

In this case, Petitioner contends that his counsel argued for the finding of a lesser felony in a felony murder trial in that counsel claimed that arson in the third degree was not one of the enumerated felonies in Delaware's felony murder statute, which Petitioner asserts is incorrect. The Petitioner contends that this provided "the trier of fact with an avenue for tailoring its verdict around the fact that the state had failed to meet its burden of proof for the charged arson 1st and also precluded the defendant from pursuing state's failure to prove its case on appeal." (D.I. 2 at 11).

After a review of the record, the Court concludes that this is an inaccurate statement of the facts. First, Defense Counsel argued for a finding of criminal negligence. (*See* Trial Tr. October 20, 1997 at 28). Additionally, the Delaware statute at issue has two relevant subsections. Section 636(a)(2) of the Delaware Code states "[i]n the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, the person recklessly causes the death of another person." Whereas, § 636(a)(6) states

> The person, with criminal negligence, causes the death of another person in the course of and in furtherance of the

commission or attempted commission of any degree of rape, unlawful sexual intercourse in the first or second degree, kidnaping, arson in the first degree, robbery in the first degree, burglary in the first degree, or immediate flight therefrom.

*Del. C.* § 636(a)(6). In the case at bar, Defense counsel was arguing for a finding of criminal negligence which would place the case within the purview of Delaware Code § 636(a)(6). If the Court had found that the Defendant was criminally negligent and committed arson in the third degree, the Defendant would not have been found guilty of felony murder because under § 636(a)(6), arson in the third degree is not one of the enumerated felonies. Therefore, the Court finds that counsel's criminal negligence argument was objectively reasonable within the meaning of *Strickland.* Additionally, the Court cannot find that the Defendant was prejudiced by this argument in that the outcome of the proceeding would have been different absent counsel's argument. Thus, the Court concludes that Petitioner has not alleged cause for his procedural default because his ineffective assistance of counsel claim does not constitute an independent constitutional violation, and therefore, the Court need not consider the question of actual prejudice. *See Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Lawrie v. Snyder,* 9 F.Supp.2d 428, 453 (D.Del.1998).

Further, the Court concludes that Petitioner cannot establish that a miscarriage of justice will result if the Court does not review Petitioner's claim. The miscarriage of justice exception applies only in extraordinary cases and is "concerned with actual innocence as compared to legal innocence." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Murray,* 477 U.S. at

496, 106 S.Ct. 2639. To establish a "miscarriage of justice," a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 326, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Stated another way, a petitioner "must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt about his guilt." *Kuhlmann v. Wilson*, 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (internal quotations omitted). Thus, the miscarriage of justice analysis focuses on "illegally admitted" evidence, "wrongly excluded" evidence, and newly discovered evidence. *Walker v. Snyder*, Civil Action No. 94–96–SLR, mem. op. at 7 (D.Del. Aug. 3, 1994).

▮ In this case, Petitioner claims "absolute innocence." (D.I. 2 at 26 (stating that "it has been the contention of the petitioner that this fire was in fact a grease fire.")). However, Petitioner's claim is not grounded on any illegally admitted,[4] wrongly excluded or newly discovered evidence. Rather, Petitioner's claim is based on the record evidence, because Petitioner contends that insufficient evidence existed to sustain Petitioner's conviction for third degree arson. The Court has recognized that claims of insufficient evidence do not involve a miscarriage of justice. *See Walker*, Civil Action No. 94–96–SLR at 6–9. Because Petitioner's claim of "absolute innocence" is based on

legal insufficiency rather than on a showing of actual, factual innocence,[5] the Court concludes that Petitioner has not established that a miscarriage of justice will occur if the Court does not review Petitioner's claim.

In sum, the Court concludes that Petitioner cannot overcome the procedural default of his claim. Accordingly, Petitioner's claim of ineffective assistance of counsel for arguing for a lesser felony, is procedurally barred and therefore must be dismissed.

### 3. Failure to Move for Recusal of the Judge

▮ Petitioner contends that counsel rendered ineffective assistance of counsel in that he failed to move for the recusal of the trial judge. Specifically, Petitioner contends that counsel refused to move for recusal of the trial judge after the judge conducted an exparte communication with the State's Chief Fire Marshal, Willard Preston, which resulted in judicial bias. (D.I. 2 at 11).

The conversation at issue concerned a defective electrical outlet. (*See* Appellants Appendix for Case No. 271, 2000 at A–14). The Defense counsel, in his affidavit, noted that the conversation at issue took place in open court and that the trial judge consulted with defense counsel before addressing the fire marshal. *See Kirk*, ID No. 9612002650–R1 at *4. The trial judge rejected Kirk's claim for judicial bias under the two part test articulated in *Jackson v. State*, 684 A.2d 745, 753 (Del.1996). Specifically, the trial judge noted that he harbored no personal bias towards Kirk and that objectively, there was no appearance

---

4. The Court has already determined that the Petitioner's confession was properly admitted.

5. *See United States v. Ramos*, 147 F.3d 281, 287 (3d Cir.1998) ("[T]o show actual innocence, the movant must show 'factual inno-

cence, not mere legal insufficiency' ") (quoting *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998)).

of impropriety. *See Kirk*, ID No. 9612002650–R1 at *4. Therefore, the Court held that any recusal motion filed by defense counsel would have been denied. *Id.* The Superior Court, while reviewing the petition for post-conviction relief, found that the trial court held no bias towards the Petitioner based on the disputed conversation and that no appearance of impropriety existed as a result of the conversation. *See Kirk*, ID No. 9612002650–R1 at *4. As a result, the Superior Court found that counsel was not constitutionally ineffective. *Id.*

 A judge's duty to remain impartial is addressed by the Delaware Judges' Code of Judicial Conduct, Canon 3C. *See* Delaware Judges' Code of Judicial Conduct, Canon 3C. There is a two step test to determine whether a judge is biased which includes both a subjective and objective prong. First, under the subjective prong, the judge must be satisfied that "he or she could proceed to hear the case free of bias or prejudice concerning a party." *Jackson*, 684 A.2d at 753. Second, under the objective prong, it must be determined "whether there is an appearance of personal bias." *Id.* The standard of review on appeal of this determination is the abuse of discretion standard. *Id.*

In the instant case, the Court concludes that the state court's analysis was not an unreasonable application of the *Jackson* and *Strickland* standards. First under the subjective prong of *Jackson*, the Court concludes that the trial judge harbored no personal bias against the Petitioner. Additionally, in regard to the objective prong, the Court concludes that there was no appearance of impropriety because the conversation was unrelated to the case. Moreover, the Court notes that the Peti-

tioner cannot meet the prejudice prong of the *Strickland* analysis because the trial court noted that if defense had moved for recusal, the court would deny the motion. *See Kirk*, ID No. 9612002650–R1 at *4. Therefore, the Court concludes that this ground for relief has no basis in law or fact and must be denied.

### 4. Failure to Retain a Third Expert

 Petitioner contends that counsel rendered ineffective assistance in that counsel refused to retain a third expert. (D.I. 2 at 11). Specifically, Petitioner claims that counsel refused to retain a third expert to resolve whether the rum was flammable because there was an issue of credibility between the state and defense's flammability tests. (D.I. 2 at 11).

In the instant case, defense counsel filed an affidavit which avers "[a]t no time during the trial did Kirk request that Counsel move to have the Court initiate an independent test burn to resolve the conflict between the state and defense experts." *See* Kirk, ID No. 9612002650–R1 at *3 (quoting defense counsel's affidavit at ¶ 4). Based on this, the Superior Court found that Defense counsel's statement was more credible than Petitioner's, whom they noted had repeatedly lied to the police. *Id.* Additionally, the Superior Court found that even if Petitioner had requested Defense counsel to seek a third expert, refusal to do so was not objectively unreasonable. *Id.* at *4. Additionally, the Superior Court noted that the Petitioner could not show that if counsel had moved for another expert that the result of the trial would have been different. Id. at *4.[6] Subsequently, the Delaware Supreme Court affirmed this decision.

---

6. The court also noted that, in a federal lawsuit against Captain Morgan's Spiced Rum, Kirk acknowledged the "extreme flammabili-

ty" of the rum is undebatable. Petitioner later withdrew from this lawsuit. *See Kirk*, ID No. 9612002650–R1 at *4 n. 16

The Court concludes that the state court's decision was neither contrary to, nor did it involve an unreasonable application of the *Strickland* standard. For this reason, the claim will be dismissed.

## C. Falsified Evidence

■ Petitioner claims that he was denied his Sixth and Fourteenth Amendment right to a fair trial because the state presented falsified evidence at trial. (D.I. 2 at 12). Specifically, Petitioner contends that the state presented falsified evidence in the form of a videotape depicting a test burn of 70 proof rum and presented falsified transcripts and/or videotape of Petitioner's confession. (D.I. 2 at 12–17). Petitioner, in regard to the test-burn videotape, contends that the substance used in test was not pure 70 proof Captain Morgan's rum and that by consulting with two experts in the field the Petitioner has learned that alcohol vapors will only ignite by open flame and that there was an electric stove at the apartment which does not have an open flame. (D.I. 2 at 13).

In regard to the contention that the videotape of the test-burn was fabricated, the Superior Court found that Petitioner provided no support for his contention and relied on two unnamed experts, information from television cooking shows and common knowledge regarding the color of the flames.[7] *See Kirk*, ID No. 9612002650–R1 at *4–*5. The Superior Court, noting that Petitioner's claim lacked a " 'sufficient factual [or] legal basis' " dismissed the claim and held that the issue of the flammability of the rum was resolved against petitioner at trial and on appeal and therefore was procedurally barred as having been formerly adjudicated. *Id.* at *5. The Delaware Supreme Court later affirmed this decision.

The Superior Court rejected this claim as a factual matter, as unsupported by the record. This finding is entitled to a presumption of correctness absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Gattis v. Snyder*, 46 F.Supp.2d 344, 379 (D.Del.1999). The Court concludes that Petitioner has failed to rebut this presumption of correctness; therefore the claim that the test-burn experiment was fabricated is dismissed.

The Petitioner also contends that tapes and transcripts of his interrogation were tampered with in that portions where Petitioner had asked for an attorney and had been threatened were eliminated from the tapes and transcripts. (D.I. 2 at 15–16). The Superior Court addressed this matter in relation to Petitioner's ineffective assistance of counsel claims. The Superior Court watched the tapes in their entirety and found nothing to suggest that portions of the tapes were erased. *See Kirk*, ID No. 9612002650–R1 at *3. Additionally, the court noted that Petitioner referred to blips in the tapes where police had allegedly erased Petitioner's requests for an attorney and to cease the interview. The court found that no such blips were either visible or audible. *Id.* at *3 n. 12. Again, the Court notes that the Superior Court rejected Petitioner's claim as lacking any factual merit. The Court concludes that Petitioner has not rebutted this presumption of correctness. Therefore, the claim must be dismissed.

## D. Insufficient Evidence to Sustain the Conviction

■ Petitioner contends that there was insufficient evidence to support his conviction of arson. (D.I. 2 at 10). Specifically, Petitioner alleges that the state failed to

---

**7.** It should be noted that although the Superior Court calls the experts "unnamed" the

Petitioner did in fact name these experts in his habeas corpus petition.

establish motive, intent and opportunity as elements of arson. (D.I.17–20). The Petitioner raised this argument on direct appeal to the Supreme Court of Delaware which affirmed his conviction. *Kirk v. State*, No. 532, 1997, 1999 WL 415802 (Del. April 29, 1999). Additionally, Petitioner raised this issue in his second post-conviction petition. The Superior Court found that the claim was procedurally barred because Petitioner did not raise it in his initial post-conviction petition and that the failure to review the claim did not result in a fundamental miscarriage of justice. *State v. Kirk*, ID No. 96120556–R2, 2001 WL 755942 (Del.Super.Ct. June 25, 2001) at *3.

■ When a petitioner challenges his custody on the grounds that there was insufficient evidence to support his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, referring to state law for the substantive elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Moore v. Deputy Comm'rs of the State Correctional Inst.*, 946 F.2d 236, 243 (3d Cir.1991); *Jordan v. Snyder*, Civ. Action No. 97–385–SLR, mem op. at 10, 2000 WL 52152 at *4 (D.Del. January 5, 2000).

■ Petitioner was convicted of arson in the third degree which requires proof that Petitioner "recklessly damage[d] a building by intentionally starting a fire...." 11 *Del. C.* § 801(a).[8] Under Delaware state law, a person acts recklessly with respect to an element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from his conduct. *Lawrie v. State*, 643 A.2d 1336, 1341 (Del.1994) (citing 11 *Del. C.* § 231(c)).

The trial Court found that Petitioner intentionally started the fire on December 4, 1996. (Trial Tr. 10/23/97 at 2). Specifically, the trial court found that Petitioner was under the influence of alcohol, was angry and feeling rejected by Darlene Hamby, who was flirting with at least three men, and damaged his only worldly possession, his grandfather clock. *Id.* at 3. The trial court also found that Defendant had motive because he was leaving Ms. Hamby's apartment because she did not show him respect. *Id.*

Additionally, the trial court found that the Petitioner had opportunity because for several minutes his whereabouts were unaccounted for. *Id.* Further, the trial court noted that Petitioner had given two conflicting stories about how the fire in question was started. First, Petitioner stated that he was lighting a cigarette off the stove and the rum accidentally spilled onto the burner. *Id.* at 3–4. At another point Petitioner indicated that alcohol was ruining his life so he was throwing it away. *Id.* The trial court also discussed the fact that the Petitioner did not shout for help, awake the children, call 911, turn off the burner or attempt to douse the flames. *Id.* at 5. Moreover, the court noted that there was no electrical failure and that there was a pooling effect under the burner, where the heat from the burner caused vaporization of the ethanol in the rum, which ignited upon reaching the ignition temperature and that Petitioner knew that such a result would occur. *Id.* at 5. Final-

---

8. It should be noted that, although the state addresses the sufficiency of evidence for the three convictions of felony murder, the Petitioner, in his Petition only raises the suffi- ciency of evidence with regard to the arson conviction. Therefore, the Court will only address the sufficiency argument with respect to arson.

ly, the trial Court found that Petitioner's actions in starting the fire showed that he recklessly damaged the building. *Id.* at 6.[9]

The Court concludes that the Delaware Superior Court's decision was neither contrary to nor did it involve an unreasonable application of *Jackson.* The Delaware Superior Court properly reviewed the evidence and reasonably concluded that it was sufficient to establish third degree arson. The Court concludes that when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact, hearing the evidence presented, could have found the elements of third degree arson beyond a reasonable doubt.

In sum, the Court concludes that the Delaware Superior Court's rejection of this claim, and the Delaware Supreme Court's affirmance was a reasonable application of federal law, and Petitioner is not entitled to habeas relief on this ground.

### E. Deficient Indictment

In his last claim, Petitioner contends that he was denied his constitutional right to be tried by indictment. (D.I. 2 at 20). According to Respondent, this claim is procedurally barred because Petitioner failed to fairly present it to the Delaware Supreme Court. A review of the record confirms that Petitioner presented his claim of a deficient indictment to the Superior Court in his second motion for post-conviction relief. The Delaware Superior Court dismissed his claim as barred under Rule 61(i)(2) because he did not assert it in his initial motion under Rule 61. *State v. Kirk,* ID No. 96120556–R2 (Del.Super.June 25, 2001) 2001 WL 755942 at *4. Additionally, the Superior Court found that review of the claim was not warranted in the interests of justice. *Id.* The Dela-

ware Supreme Court affirmed this decision on appeal.

In dismissing the appeal, the Delaware Supreme Court relied solely on Superior Court Criminal Rule 61(i)(2), which bars a claim raised in a subsequent post-conviction motion that a petitioner did not raise in his first such motion, "unless consideration of the claim is warranted in the interest of justice." Del. Superior Court Crim. Rule 61(i)(2). Rule 61(i)(2) is an independent and adequate state ground for purposes of procedural default. *See Carter v. Neal,* 910 F.Supp. 143, 149–150 (D.Del.1995). Accordingly, the Court finds that Petitioner's claims of ineffective assistance are procedurally defaulted under Rule 61(i)(2). Thus, federal habeas review is unavailable absent a showing of either cause and prejudice or a miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

The Court has reviewed each of Petitioner's submissions in an effort to determine why he failed to include this claim in his first post-conviction appeal. Petitioner has failed to provide the Court with any explanation for this procedural default. In these circumstances, the Court cannot find cause to excuse Petitioner's procedural default in his post-conviction appeal.

▮▮ Petitioner asserts that the Court should review this claim because failure to do so will result in a miscarriage of justice because of a constitutional violation that undermined the legality, reliability, integrity or fairness of the proceeding. (D.I. 2 at 2). In this case, Petitioner claims "absolute innocence." (D.I. 2 at 26 (stating that "it has been the contention of the petitioner that this fire was in fact a grease fire.")). However, Petitioner's claim is not grounded on any illegally ad-

---

**9.** The trial court also noted that voluntary intoxication was not a defense to arson in the third degree. *See* Trial Tr. 10/23/97 at 7.

mitted, wrongly excluded or newly discovered evidence. Rather, Petitioner's claim is based on the record evidence, because Petitioner contends that insufficient evidence existed to sustain Petitioner's conviction for third degree arson. The Court has recognized that claims of insufficient evidence do not involve a miscarriage of justice. *See Walker,* Civil Action No. 94–96–SLR at 6–9. Because Petitioner's claim of "absolute innocence" is based on legal insufficiency rather than on a showing of actual, factual innocence, the Court concludes that Petitioner has not established that a miscarriage of justice will occur if the Court does not review Petitioner's claim.

Because the Court cannot find a reason to excuse his procedural default, the Court concludes that Petitioner's claim that the indictment was deficient is procedurally barred from federal habeas review.

### F. Motion to Amend Petition

Shortly after filing his Petition, and before Respondent filed an answer, Petitioner filed a motion to amend his Memorandum in Support of his Petition for Habeas Corpus. (D.I.11). Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a); *see Riley v. Taylor,* 62 F.3d 86, 89 (3d Cir.1995)(stating that Rule 15(a) applies to motions to amend habeas petitions). Petitioner filed his motion to amend before Respondent served his answer. For this reason, his motion to amend will be granted.[10]

### G. Motions for Appointment of Counsel and Discovery

■ Additionally, Petitioner has filed a motion requesting that the Court appoint counsel to represent him in this matter and a Motion for Discovery. (D.I. 19 and 5). It is well established that Petitioner has no constitutional right to counsel in this habeas proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). A district court, however, may appoint counsel to represent an indigent habeas petitioner "if the interest of justice so requires." Rule 8(c) of the Rules Governing Section 2254 Cases.

For the reasons stated, the Court has determined that Petition's claims do not provide a basis for federal habeas review. Accordingly, his motions for appointment of counsel and for discovery will be denied as moot.

### H. Certificate of Appealability

■ Finally, the Court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, Petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

■ Here, the Court has determined that federal habeas relief is unavailable as to each of Petitioner's claims. The Court is persuaded that reasonable jurists would not debate the correctness of the assessments the Court has made concerning Pe-

---

**10.** As noted above, the Court has considered Petitioner's amendments to his memorandum in support of his Petition in rendering its decision.

titioner's claims for relief. Because the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed above, the Court will deny the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Mark A. Kirk. The Court will grant Petitioner's motion to amend the memorandum in support of his Petition, and will deny as moot his motions for appointment of counsel and discovery. The Court will not issue a certificate of appealability.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 30th day of January 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Petitioner Mark A. Kirk's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.I.1), is *DENIED*;

2. Petitioner's Motion to Amend his Memorandum in Support of his Petition (D.I.11) is *GRANTED*;

3. Petitioner's Motion for Discovery (D.I.4) is *DENIED AS MOOT*;

3. Petitioner's Motion for Appointment of Counsel (D.I.19) is *DENIED AS MOOT*;

4. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2).